UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LISA H.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:21-cv-00163-TWP-KMB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Lisa H. applied for disability insurance benefits from the Social Security Administration ("SSA") on September 26, 2019, alleging an onset date of September 3, 2019. [Dkt. 6-3 at 2-3.] Her application was initially denied on December 23, 2019, [*id.* at 16], as well as upon reconsideration on May 29, 2020, [*id.* at 36]. Administrative Law Judge Neil Morholt (the "ALJ") conducted a hearing on February 24, 2021. [Dkt. 6-2 at 34.] The ALJ issued a decision on April 19, 2021, concluding that Lisa was not entitled to receive disability insurance benefits. [*Id.* at 27-28.] The Appeals Council found no basis for changing the ALJ's decision on August 12, 2021. [*Id.* at 2-3.] On October 15, 2021, Lisa timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Dkt. 1.] This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motions.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND

Lisa was 56 years of age at the time she applied for disability insurance benefits. [Dkt. 6-3 at 2.] She previously worked as an insurance clerk, insurance claim representative, and customer service representative supervisor. [Dkt. 6-2 at 27.][2]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Lisa was not disabled. [Dkt. 6-2 at 27.] Specifically, the ALJ found as follows:

- At Step One, Lisa had not engaged in substantial gainful activity[3] since September 3, 2019, the alleged onset date. [*Id.* at 19.]

- At Step Two, Lisa had the following severe impairments: obesity and osteoarthritis of the hips, hands, shoulders, elbows, and wrists. [*Id.*]

- At Step Three, Lisa did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*Id.* at 21.]

- After Step Three but before Step Four, Lisa had the RFC to "perform sedentary work as defined by 20 CFR 404.1567(a) except she can do no more than occasionally climbing ramps and stairs, balancing, stooping, and crouching. She can do no climbing of ladders, ropes, or scaffolds, and no kneeling, or crawling. She can have no more than frequent exposure to wetness, unprotected heights, or moving mechanical parts." [*Id.* at 22.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Lisa's RFC, Lisa was capable of performing her past relevant work as an insurance clerk, insurance claim representative, and customer service representative supervisor. [*Id.* at 27.][4]

---

[2] The relevant evidence of record is amply set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

[4] Because the ALJ found that Lisa could perform her past relevant work, he did not proceed to Step Five and determine whether there were jobs that existed in significant numbers in the national economy that Lisa could have performed.

### III. DISCUSSION

Lisa makes four assertions of error regarding the ALJ's decision: (1) the ALJ improperly substituted his lay opinion for those of the medical sources, (2) her conditions meet Listing 1.18 (Abnormality of a major joint(s) in any extremity), (3) the RFC is not supported and lacks an accurate and logical bridge, and (4) the ALJ's ultimate decision is unsupported. The Court will address the issues as necessary to resolve the appeal beginning with an issue that is dispositive.

**A. Evidence of Lisa's Joint Pain and Stiffness**

Lisa asserts that the ALJ selectively and inaccurately characterized evidence of her joint pain and stiffness. [Dkt. 9 at 12.] Lisa claims that the ALJ's "serious factual mistakes" and mischaracterization of the evidence affected the ALJ's determinations at each step of the decision-making process and therefore requires remand. [*Id.* at 11.] For example, Lisa asserts that the ALJ rejected a well-supported opinion from Dr. Jason Powell, a consultative examiner who examined Lisa and concluded that she was not able to successfully participate in work-related activities. [Dkts. 6-2 at 25-26; 9 at 12.] In finding Dr. Powell's opinion unpersuasive, Lisa asserts that the ALJ concluded that Lisa "denied having muscle, joint, or back pain at most doctor visits." [*Id.* at 13.] Lisa contends that the ALJ relied on only two exams to support this conclusion, but one of the exams demonstrates that Lisa *did* complain of joint pain and the other exam was a follow-up exam for cardiac issues and there is no indication that musculoskeletal range of motion was assessed. [*Id.* at 13-14.] Lisa further asserts that several exams in the record show that Lisa had joint pain—findings that are consistent with Dr. Powell's opinion but that were ignored by the ALJ. [*Id.*] Similarly, Lisa asserts that the ALJ's consideration of Listing 1.18 was flawed in light of the evidence the ALJ mischaracterized or ignored. [*Id.* at 17.] For example, one requirement of Listing 1.18 is that the claimant must have chronic joint pain and stiffness, and Lisa claims she has

5

complained of chronic joint pain at several appointments, despite the ALJ's mischaracterization of the evidence. [*Id.* at 18.]

The Commissioner contends that the ALJ accounted for all of Lisa's symptoms supported by the record evidence. [Dkt. 11 at 8.] In finding that Lisa could perform sedentary work, the Commissioner asserts that the ALJ relied on the opinions of state agency physicians and considered Dr. Powell's opinion but found it not persuasive. [*Id.* at 8, 10.] The Commissioner argues that the ALJ explained that Dr. Powell's opinion was not supported by his examination of Lisa, which showed a mostly normal range of motion, normal reflexes, no tenderness or atrophy, normal sensation, and normal motor strength. [*Id.* at 10.] The Commissioner further argues that Dr. Powell's opinion was inconsistent with other examinations that showed normal gait and no joint or back pain. [*Id.*] And the Commissioner highlights medical examinations that the ALJ relied on, including a March 2019 exam where Lisa exhibited normal gait, station, strength, tone, and normal movement in arms, legs, and joints; as well as a July 2019 exam that showed normal range of motion, full strength, no tenderness, and no muscle atrophy or effusions of her hip. [*Id.* at 9.] Moreover, the Commissioner asserts that Dr. Small and Dr. Whitley considered Dr. Powell's examination of Lisa and reasonably concluded that she could perform sedentary work. [*Id.*] The Commissioner contends that the consideration of Dr. Powell's opinion bolsters the ALJ's finding that Dr. Powell was not persuasive. [*Id.*] With respect to Listing 1.18, the Commissioner does not address Lisa's claims that the ALJ failed in assessing her chronic joint pain and stiffness under Part A. [*Id.* at 6.]

In her reply, Lisa asserts that the Commissioner's response focuses only on what the ALJ considered, but she emphasizes that the ALJ cannot analyze only the evidence supporting his conclusion while ignoring evidence that undermines his conclusion. [Dkt. 12 at 2.] Lisa claims

6

that the ALJ failed to address relevant evidence supporting her claim. [*Id.*] Lisa further contends that the Commissioner relies on the ALJ's summary of evidence provided in the decision, but the issue is not what the ALJ considered, but rather, what he did not consider. [*Id.* at 4.] Moreover, Lisa argues that summarization is not analysis sufficient to show the ALJ's reasoning. [*Id.*] Lisa reiterates that the ALJ "(1) ignored evidence undermining his reliance on a 'denial of joint pain and stiffness' to (a) conclude that Plaintiff's impairments did not meet or medically equal a listing, (b) reject a well-supported medical opinion from the *Agency's own examiner*, and (c) discredit Plaintiff's symptoms and (2) placed more weight on 'unremarkable' exams while erroneously ignoring other exams demonstrating significant objective abnormalities." [*Id.* at 5 (emphasis in original).] Lisa contends that the Commissioner did not address her argument that the ALJ mischaracterized and selectively considered evidence which rendered the decision entirely unreliable. [*Id.* at 5-6.] Lisa argues that there is sufficient record evidence showing that Dr. Powell's opinion is persuasive and that the ALJ failed to offer a "good explanation" for rejecting it. [*Id.* at 8.]

The Seventh Circuit has held that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *see also Jones v. Saul*, 823 Fed. Appx. 434, 439 (7th Cir. 2020) (holding that "[a]n ALJ need not credit the opinions of the agency's own doctors, but *rejecting* the opinion of an agency's doctor that supports a disability finding is 'unusual'" and should be followed with a "good explanation") (emphasis in original).

Remand is appropriate when an ALJ discounts a medical opinion by relying on cherry-picked evidence. *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018); *see also Cole v. Colvin*,

7

831 F.3d 411 (7th Cir. 2016) (finding that "the [ALJ] was cherry picking the medical record—which is improper"). While an ALJ need not consider every piece of evidence in his decision, "he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (concluding that an ALJ may not consider only evidence that supports his conclusion while disregarding evidence that undermines it). If the ALJ does not "develop a full and fair record," the court cannot uphold the decision because the ALJ has failed to fulfill his basic obligation of building "an accurate and logical bridge between the evidence and the result." *Beardsley*, 758 F.3d. at 837.

The ALJ addressed Dr. Powell's examination of Lisa and found Dr. Powell's opinion not to be persuasive:

> Jason M. Powell, a consultative examiner, opined in December 2019 that the claimant could lift up to ten pounds, stand less than five minutes at a time, walk for 100 feet before stopping, and sit for up to ten minutes before needing to change positions. She had no limitations in the use of her hands, but she could climb ladders or scaffolds, ramps, or stairs. In addition, she could not adapt to routine changes in a workplace setting. Overall, Dr. Powell opined that the claimant could not successfully participate in work related activities. This opinion is not persuasive, because it is not consistent with the other evidence of record and it is not fully supported by the onetime exam overseen by Dr. Powell. During the consultative exam, although the claimant had difficulty moving about the room, there were mostly normal findings, such as 5/5 motor strength, mostly normal range of motion, no tenderness, swelling, crepitus, or deformity. Although at the consultative exam, she displayed difficulty moving about, most physical exams revealed normal gait with ambulation, and she denied having muscle, joint, or back pain at most doctor visits, all of which does not support an inability to participate in work activities, or, for that matter, the medical necessity for an assistive device or other such debilitating standing/walking limitations.

[Dkt. 6-2 at 25-26 (citations omitted).]

The Court concludes that the ALJ's analysis and ultimate rejection of Dr. Powell's opinion omits and mischaracterizes key record evidence and therefore does not offer a "good explanation"

8

for its rejection. The ALJ asserts that Lisa "denied having muscle, joint, or back pain at *most* doctor visits." [*Id.* at 26 (emphasis added).] In support of this assertion, the ALJ cites only two unique medical exams despite the fact that the record shows Lisa had many more than that. [*Id.* (citing 8/F20, 7F/3, 7F/19) [5].] The first cited exam contains a Review of Symptoms ("ROS") summary, including a note that Lisa "reports no muscle aches, no muscle weakness, no arthralgias/joint pain, [and] no back pain." [Dkt. 6-7 at 205.] However, just above the ROS summary, the exam report notes that Lisa "has joint pain," and below the ROS summary it notes "[a]dditionally reports: joint pain."[6] [*Id.*] The second cited exam is a follow-up exam for an echocardiogram. [*Id.* at 144.] It notes that Lisa's joints were "non tender to palpation," but it does not indicate that there were any further assessments for joint pain, stiffness, or range of motion/gait limitations, and it does not indicate that Lisa affirmatively denied muscle, joint, or back pain. Nor is there reason for the Court to expect that a visit for cardiac-related issues would shed much light on Lisa's muscle, joint, or back pain. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (explaining that "[t]here is no reason to expect a doctor asked about an eye problem, or back pain, or an infection of the urinary tract to diagnose depression"). Thus, while the ALJ relied on two medical records to support his conclusion that Lisa denied muscle, joint, and/or back pain at most of her appointments, the Court finds the cited evidence to be contradictory at best or not relevant to the orthopedic issue that Lisa claims prevents her from working.

---

[5] The ALJ cites three documents, but 8F/20 and 7F/19 are identical copies of the same medical exam.

[6] The Court acknowledges the contradictory nature of this document, but at best, this exam is inconclusive as to the issue of whether Lisa complained of pain. Thus, the Court cannot conclude that it supports the ALJ's conclusion that Lisa denied pain, which is a key finding for purposes of determining Lisa's claim.

Erroneously relying on these two medical exams for his conclusions, the ALJ makes several additional findings throughout his opinion that seek to diminish Lisa's complaints of joint pain:

- "She denied having joint or back pain on several occasions." [Dkt. 6-2 at 23.]

- "In March 2019, she denied having any muscle aches or weakness, no athralgia/joint pain, [and] no back pain." [*Id.* at 24.]

- "At most routine doctor visits, the claimant denied having any joint or back pain." [*Id.* at 25.]

In addition to the fact that these medical exams do not support the ALJ's finding that Lisa denied having joint pain as discussed above, the ALJ cites only *one* medical record to support his conclusion that Lisa denied pain at *most* medical visits. [*Id.*] This is problematic and, as detailed further below, ignores significant evidence in the record to the contrary.

Even considering the ALJ's decision as a whole and evaluating all of the record evidence, the Court cannot conclude that the ALJ's findings here are supported. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.7 (7th Cir. 2004) (explaining that "it is proper to read the ALJ's decision as a whole"). Review of the relevant record evidence shows that the ALJ's conclusions significantly downplay Lisa's complaints of pain at various appointments. For example, a January 2014 medical report notes that Lisa "does have joint pain in several joints[,] especially her knee." [Dkt. 6-7 at 83.] At a March 2019 appointment, Lisa reported a history of arthritis and joint pain. [*Id.* at 160.] A record from an April 2019 appointment notes Lisa's history of fibromyalgia/arthritis and chronic pain. [*Id.* at 157.] In July 2019, Lisa consulted an orthopedic surgeon for left hip pain, and that surgeon noted:

> Lisa Harty is a 56 y/o female who presented today for [l]eft hip pain. Patient states pain started several years ago. Pain is severe, worsening and constant and described as aching, grinding, knife-like and sharp, is worse with weight bearing, is

10

>aggravated by walking and is worse after period of inactivity, and groin pain. Pain is located [in] groin. Factors that aggravate symptoms include activity, stair climbing, getting up from chair, sleeping, weight bearing, [and] sitting for prolonged periods of time.

[*Id.* at 27.] The orthopedic surgeon's examination showed antalgic gait, reduced range of motion, notable findings on various tests for hip pathologies, and imaging showed "severe joint space narrowing with mild osteophyte formation." [*Id.* at 29.] In August 2019, Lisa saw another orthopedic surgeon for left hip pain. [*Id.* at 25.] In October of 2019, Lisa's primary care provider noted Lisa's complaint that "everything is killing me;" that she was experiencing severe elbow, shoulder, wrist, knee, and bilateral hip pain; and that she had previously had a hip injection and seen four different orthopedic specialists. [*Id.* at 150.] Lisa was assessed with diffuse joint pain. [*Id.*] In November 2019, Lisa returned to her primary care provider and reported that she was "still having a ton of joint pain" in her bilateral shoulders, elbows, knees, and hips and that she tried to start an exercise program but was limited because of pain. [*Id.* at 146-47.] Lisa had an initial physical therapy evaluation in December 2019 and was diagnosed with left hip pain and difficulty walking. [*Id.* at 237.] Lisa complained that her leg pain had worsened over the past year; that she was having difficulty with walking, standing, squatting, and climbing stairs; and that she had had injections without much reduction in pain. [*Id.*] On exam, Lisa exhibited a moderately antalgic gait and pain in both hips. [*Id.* at 238.] In May 2020, Lisa reported increased hip and knee pain. [*Id.* at 218-20.] In August 2020, Lisa complained of bilateral hip joint pain, [*id.* at 229], as well as right wrist and bilateral knee pain—which she described as "sharp" and "worsening." [*Id.* at 231.] Lisa also reported muscle aches and weakness. [*Id.*]

These medical records cited above paint an entirely different picture of Lisa's condition than the ALJ's summation that Lisa mostly denied having joint pain. The ALJ did not confront this contrary evidence and explain why he rejected it in assessing the persuasiveness of Dr.

11

Powell's opinion or at other steps in his analysis—including his analysis of whether Lisa met Listing 1.18[7] and his analysis of the intensity, persistence, and limiting effects of Lisa's symptoms.[8] Although the ALJ references some of Lisa's complaints of pain and acknowledges some of her efforts to reduce pain-related symptoms (*i.e.*, physical therapy, compression stockings, and medication), throughout the decision he merely summarizes this record evidence but does not analyze it. This is problematic because it fails to explain if or why such evidence undermines Lisa's statements of pain or explain how the ALJ considered such evidence in reaching his conclusion, particularly here with respect to rejecting Dr. Powell's opinion that Lisa is unable to perform work-related activities. *See Amy R. v. Kijakazi*, No. 1-21-CV-00260-MJD-JPH, 2022 WL 796332, at *4 (S.D. Ind. Mar. 15, 2022) (finding that "summary is not analysis, as it does not explain *why* the evidence summarized undermined Plaintiff's statements about [her] symptoms or limitations, or which statements were inconsistent") (internal quotations omitted) (emphasis in original).

Because the ALJ failed to address the substantial evidence that Lisa consistently complained of joint pain over the course of years—evidence that undermines the ALJ's finding

---

[7] SSA Listing 1.18 Part A requires that the claimant suffer from "[c]hronic pain or stiffness." In his decision, the ALJ found that "[r]egarding paragraph A, there were times when the claimant denied having any joint pain or stiffness. (7F/19, 8F/20)." Again, these medical records do not support this conclusion, and the ALJ did not confront contrary evidence showing that Lisa *did* complain of joint pain when assessing Listing 1.18 Part A.

[8] The ALJ also concludes that Lisa's physical exams were generally normal. For example, the ALJ explains that, while Lisa "has a history of pain in multiple joints . . . imaging reports were mostly mild. There were mild degenerative changes to the elbows, mild osteoarthritis of the right and left hands, with no significant changes over time. Wrist x-rays at the time showed mild degenerative osteoarthritis. Hip x-rays from December 2018 showed degenerative changes, worse on the left." [Dkt. 6-2 at 24.] To the extent the ALJ cites such evidence as part of his evaluation of Lisa's complaints of pain, the Court notes that an ALJ must "not evaluate an individual's symptoms based solely on objective medical evidence." SSR 16-3p.

that she mostly denied having pain—the Court cannot conclude that the ALJ developed a full and fair record. This error is not harmless because without the ALJ's mischaracterization of Lisa's joint pain, the ALJ may have found that Lisa is not capable of sedentary work. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2004) (holding that the ALJ's decision must be reversed because it was "compromised by a mischaracterization of the medical evidence"). Accordingly, the Magistrate Judge recommends that the ALJ's decision be remanded given that the ALJ's flawed analysis affected his determinations at multiple steps.

### B.  Other Arguments

Having found that remand is necessary for the reasons detailed above, the Court declines to analyze Lisa's remaining arguments. On remand, further consideration of Lisa's RFC, the other medical assessments, and the relevant evidence of record including any updated evidence is necessary, along with further consideration of Dr. Powell's opinion.

### IV.  CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision finding that Lisa was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

**SO RECOMMENDED.**

Date: 1/17/2023

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email